In the Interest of Aleta B. Arreguin Lowe ROY, Deceased.

No. 10–07–00028–CV.

Court of Appeals of Texas, Waco.

Jan. 23, 2008.

Rehearing Overruled March 18, 2008.

Gilbert Vara, Jr., The Law Office of Gilbert Vara, Jr., San Antonio, for appellant.

Vance Dunnam, Jr., Dunnam & Dunnam, Waco, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

Clark Andrew Arreguin, a son of Aleta B. Arreguin Lowe Roy (Aleta), complains of his removal as independent executor of Aleta's Estate. In three issues, Clark claims: (1) that there was no evidence or alternatively factually insufficient evidence to support his removal; (2) that the trial court erred in denying him attorney's fees, and (3) that there is no evidence to support the appointment of Steve Arreguin as successor independent executor. We will affirm the judgment of the trial court.

### Background

For many years Imperial Tank Company (ITC), a steel tank fabrication business, was owned by the family and managed by Clark. In 1991, Clark became the full owner. For over 10 years thereafter ITC leased approximately 10 acres of land (real property) owned by Aleta for its business operations. In 2004, Aleta died leaving a will that divided the real property between Clark and her other three children, Steve, Eileen Arreguin, and Liza Rena Hunt (the Siblings). The will was admitted to probate, and Clark was appointed sole independent executor.

Shortly before her death, Aleta had prepared a renewal lease agreement for the property leased by ITC. The new lease was identical to ITC's previous lease agreements, which set the rent at $10,000 per month. The new lease was, however, never signed by Clark for ITC, and shortly after Aleta died, the lease then in effect entered into its "holdover" period.

Before renewing the lease, Clark obtained an independent appraisal of the real property, which valued it at $610,000. Based on this valuation, he determined that the appropriate rental value for the real property was $5,085 a month. Without notifying the Siblings, Clark executed annual one-year-term leases in 2004, 2005 and 2006 that changed ITC's rent from $10,000 to $5,085.

After learning of the rent reduction, the Siblings called a "family meeting" with Clark to discuss their concerns about the rent reduction and his administration of the Estate. They demanded an accounting from Clark, which he submitted a month later. The Siblings expressed several concerns about Clark's accounting; they felt it was inadequate and requested additional information to determine the exact condition of the Estate. Among the concerns listed by the Siblings was Clark's failure to provide them with a closing statement for the sale of Aleta's residence. That closing statement revealed that Clark received $2,500 as a service fee and $2,500 in administrative expenses as payment for

the sale of the home, none of which were included in the accounting. The Siblings also complained that the accounting failed to include two cranes—substantial assets of the Estate—and that Clark failed to sue Leo Roy for misconduct in damaging one of the beneficiary's property interests under the will.

The Siblings sued to remove Clark as independent executor and for the appointment of Steve as successor independent executor. At a bench trial, only Clark presented expert testimony regarding his administration of the Estate. The court found that the Siblings failed to meet their burden of proof that Clark misapplied or embezzled funds of the Estate, failed to make an accounting, or was guilty of gross misconduct or mismanagement. The Siblings filed a motion for new trial that was granted, and at a second bench trial, they presented expert testimony rebutting Clark's expert on the fair rental value of the real property.

The trial court issued findings of fact and conclusions of law, found Clark to have engaged in self-dealing by executing the three reduced-rent Leases, entered an order removing Clark as independent executor, and appointed Steve as successor independent executor. The trial court declared the three leases to be "void and unenforceable."

## Reply Brief

■ We submitted this case on November 28, 2007. On that day, Clark filed a "Letter Response to Appellees' Brief." The Siblings argue that this reply was untimely and therefore the arguments presented therein are not properly before us. We will address this matter first.

Clark did not seek leave of Court to file his untimely reply brief, as authorized by the Rules of Appellate Procedure. *See* Tex.R.App. P 38.6(c) (deadline for filing reply brief); 38.6(d) (modification of filing time for briefs); 38.7 (amendment or supplementation of briefs). Although we typically construe filing rules liberally, *see id.* 38.9, Clark's reply brief does not address any argument raised by the Siblings' brief, and therefore we will not consider it. *See* Tex.R.App. P 38.3; *N.P. v. Methodist Hosp.,* 190 S.W.3d 217, 225 (Tex.App.-Houston [1st Dist.] 2006, pet. denied); *Zamarron v. Shinko Wire Co.,* 125 S.W.3d 132, 139 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (an issue raised for the first time in a reply brief is ordinarily waived and need not be considered).

## Sufficiency of the Evidence

In his first issue, Clark contends that the evidence is legally and factually insufficient to support his removal as independent executor. The trial court found several grounds for removal, including (1) Clark misapplied property committed to his care; (2) he failed to make an accounting; (3) he was guilty of gross misconduct in the performance of his duties; and (4) his gross mismanagement caused him to violate his fiduciary duties as independent executor. Texas Probate Code Section 149C sets out the grounds for removal of an independent executor, and any one of the statute's enumerated grounds is sufficient for removal. Therefore, if at least one ground for removal is supported by legally and factually sufficient evidence, the removal order should be affirmed. We will begin with the trial court's finding that Clark was guilty of gross mismanagement when he breached his fiduciary duties to the Estate by engaging in self-dealing.

*Standard of Review*

In reviewing the legal sufficiency of the evidence, we view the evidence in the light favorable to the trial court's finding, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary

evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 822 (Tex.2005). There is legally insufficient evidence or "no evidence" of a vital fact when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)).

When the party without the burden of proof at trial complains of the factual sufficiency of the evidence to support an adverse finding, we must consider and weigh all of the evidence, not just the evidence that supports the verdict. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.1998); *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 633 (Tex.App.-Waco 2000, pet. denied). We will set aside the finding only if it is so contrary to the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Ellis*, 971 S.W.2d at 407. Reversal can occur because the finding was based on weak or insufficient evidence or because the proponent's proof, although adequate if taken alone, is overwhelmed by the opponent's contrary proof. *Checker Bag*, 27 S.W.3d at 633.

*Independent Executor's Breach of Fiduciary Duty*

■ The independent administration of estates and the testator's right to select an independent executor of his or her choice are foundations of Texas law. *In re Estate of Roots*, 596 S.W.2d 240, 243 (Tex.Civ. App.-Amarillo 1980, no writ). However, removal of an independent executor is possible for certain grounds enumerated in Section 149C of the Probate Code. *See* TEX. PROB.CODE ANN. § 149C (Vernon Supp. 2007). As alleged here, a trial court may remove an independent executor who is guilty of gross misconduct or gross mismanagement in the performance of his duties. *Id.* § 149C(a)(5). The statutory criteria of gross mismanagement and gross misconduct are sufficiently narrow to exclude ordinary negligence, yet sufficiently broad to include a fiduciary's breach of his higher and additional duties. *Geeslin v. McElhenney*, 788 S.W.2d 683, 685 (Tex. App.-Austin 1990, no writ).

■ The fiduciary duties of an executor of an estate are the same as the fiduciary duties of a trustee. *Humane Society, Etc. v. Austin Nat'l Bank*, 531 S.W.2d 574, 577 (Tex.1975). As trustee of the estate's property, the executor is subject to high fiduciary duties. *Id.* at 577. As a fiduciary, an executor has a duty to protect the beneficiaries' interest by fair dealing in good faith with fidelity and integrity. *Geeslin*, 788 S.W.2d at 685. His personal interests may not conflict with his fiduciary obligations to the estate. *See Humane Society, Etc.*, 531 S.W.2d at 577.

*Analysis*

■ The Siblings allege that Clark breached his fiduciary duty when he decreased the rent on the real property from $10,000 per month to $5,085 without consulting them. Clark counters that he did reduce the rental rate but only after he had hired an independent appraiser to establish the fair market and rental value of the land. He claims that half of the monthly $10,000 rental payment under the

prior lease was intended to be a stipend to care for his mother, and after her death he sought the appraisal to bring the rent closer to its true fair market rental value.

Eckmann, Clark's appraiser, and Glen, the Siblings' appraiser, testified to their methods in valuing the property. They disagreed largely about how to classify the land. Glen admitted that he valued the land based on the entire property, whereas Eckmann valued the land by dividing it into a small tract used by ITC and considering the rest as excess land. Glen admitted that it is not unusual for two respected appraisers to reach different values for the same property. Rodney Brown, an accountant for the Siblings, testified that Clark's rental payments were erratic and that he collected an executor fee that was not included in the accounting. He also testified that Clark's self-dealing was evident: he took a fee in the sale of the residence; he lowered the rent without consent or disclosure; and he spent too much money on an unnecessary appraisal.

■ Clark's positions as a beneficiary, the independent executor, and president of ITC create a conflict of interest. Although that conflict of interest alone may not disqualify him as an independent executor, Clark's fiduciary duty required him to disclose information regarding the estate to the Siblings. It is well recognized that a fiduciary relationship creates a duty to disclose. *Tempo Tamers, Inc. v. Crow–Houston Four, Ltd.*, 715 S.W.2d 658, 669 (Tex.App.-Dallas 1986, writ ref'd n.r.e.) (failing to disclose information is not fraudulent unless one has an affirmative duty to disclose, as in a confidential or fiduciary relationship.) It was uncontroverted at trial that Clark took a fee for the sale of the residence without disclosing this in the accounting and that he reduced the rent by almost 50% without initially notifying the Siblings. When Clark sought to decrease

the rent, his interest as president and owner of ITC became adverse to the Estate. This uncontroverted evidence is legally and factually sufficient to establish the trial court's findings that Clark exercised gross mismanagement by violating his fiduciary duties.

In response to claims that Clark took an unaccounted-for fee, Clark argues that the Estate had no money to pay his administrative fees and that the $5,000 was the only money he has ever received for his work for the Estate. These arguments cannot justify Clark's failure to disclose. Therefore, the trial court acted within its discretion to remove Clark as independent executor. *See Street v. Skipper*, 887 S.W.2d 78, 83 (Tex.App.-Fort Worth 1994, writ denied) (independent executor removed when she had claim adverse to estate); *Formby v. Bradley*, 695 S.W.2d 782, 785 (Tex.App.-Tyler 1985, writ ref'd n.r.e.) (same).

### Declaratory Relief Affecting ITC

Within his first issue, Clark argues that the trial court was without jurisdiction to declare void the rights of ITC in the three one-year leases because ITC was not served as a party. Specifically, the trial court's removal order states, in pertinent part:

(i) that each and every one of the Original Deed, Correction Deed, 2004 Lease, 2005 Lease and 2006 Lease be and is hereby declared void and unenforceable (or declared voidable, set aside, and thereby rendered unenforceable) (j) that, notwithstanding anything in "(h)" or "(i)" above, Imperial Tank Company shall not be required to discontinue its usage, or to surrender (to Steve Randall Arreguin as the successor independent executor of the Estate) its possession, of the Real Property, but (if and to the extent that it continues to use and pos-

sess the Real Property) shall remain responsible to the Estate for full and complete performance of any and all of its duties and obligations under the 2003 Lease (that Company's last valid lease to the Real Property), as well as all other duties and obligations under the 2003 Lease (that Company's last valid lease to the Real property), as well as all other duties and obligations of a holdover tenant of real property under law, (k) that Clark Andrew Arreguin is entitled to and shall receive credit for any and all monies paid by him or Imperial Tank Company to the Estate as rental for the Real Property at any time after Aleta B. Arreguin Lowe Roy's death on September 21, 2004, and (l) that, unless and until further ordered by this Court, Clark Andrew Arreguin be and is hereby enjoined from taking, or authorizing any person to take, directly and/or indirectly, any action in the lawsuit numbered 2006CI15150, styled "Clark Andrew Arreguin vs. Steve Randall Arreguin, Eileen Arreguin, and Liza Rena Hunt," pending in the 288th Judicial District Court, Bexar County, Texas.

Clark contends that although the trial court ordered declaratory relief, the Siblings' pleadings failed to request that the leases be set aside. *Tharp v. Blackwell,* 570 S.W.2d 154, 158 (Tex.Civ.App.-Texarkana 1978, no writ) (it is well settled that a court may not grant relief unsupported by pleadings or prayer).

The Siblings argue that the trial court had the authority to void the leases because an independent executor who acts without fidelity and good faith will not be allowed to promote his own interest to the injury of the beneficiaries. *See Gaines v. First State Bank,* 28 S.W.2d 297 (Tex.Civ. App.-Fort Worth 1930), *aff'd,* 121 Tex. 559, 50 S.W.2d 774 (1932) (when an executor's action defeats the ends of the beneficiaries,

the court will be justified in declaring his acts void whenever this can be done without prejudice to the rights of innocent third parties).

ITC was not a party in the trial court and is not a party to this appeal. Although the parties have briefed this issue, we are not authorized to render an advisory opinion on it. *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993) (courts have no jurisdiction to issue advisory opinions). We decline to address that part of Clark's first issue.

We now overrule the remainder of his first issue.

### Attorney's Fees

■ In his second point, Clark claims that the trial court erred in denying his request for attorney's fees and granting the Siblings' request for attorney's fees under the Probate Code. *See* TEX. PROB. CODE ANN. § 149C(d). An independent executor is entitled to reasonable attorney's fees, whether he is successful or not, if he defends his removal action in good faith. *Id.* § 149C(c). The costs and expenses incurred by a party seeking removal of an independent executor appointed without bond, including reasonable attorney's fees and expenses, *may* be paid out of the Estate. *Id.* § 149C(d). The trial court found that Clark did not defend his action for removal in good faith.

An appellate court reviews a trial court's decision on the award of attorney's fees for an abuse of discretion. *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998). Whether to award attorney's fees, and to which party, is a decision that is solely within the trial court's discretion and will not be reversed absent a clear abuse of that discretion. *Lee v. Lee,* 47 S.W.3d 767, 793 (Tex.App.-Houston [14th Dist.] 2001, pet. denied); *Sammons v. Elder,* 940

S.W.2d 276, 284 (Tex.App.-Waco 1997, pet. denied). A trial court abuses its discretion when it acts "without reference to any guiding rules or principles," or stated another way, when the trial court acts in an arbitrary and unreasonable manner. *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex.2003) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985)).

Clark alleges that under *Lee*, "an executor acts in good faith when he or she subjectively believes his or her defense is viable, if that belief is reasonable in light of existing law." *Lee*, 47 S.W.3d at 795. However, in *Lee*, the court specifically stated that the good faith standard should protect all but the plainly incompetent executors or those who willfully breach their fiduciary duties. *Id.* Here, the trial court found that Clark breached his fiduciary duty to the Estate, and ample evidence supports that finding. We thus find no abuse of discretion in the court's refusal to award attorney's fees to Clark and its award of attorney's fees to the Siblings. Clark's second issue is overruled.

### Successor Executor

Clark argues in his third issue that the record is devoid of any evidence that Steve is qualified to serve or is not disqualified from serving as the successor executor of the Estate. Persons disqualified to serve as executor include: a minor, an incompetent, a convicted felon, a nonresident of the state who has not appointed a resident agent for service, a corporation not authorized to act as a fiduciary in this state, or a person whom the court finds unsuitable. TEX. PROB.CODE ANN. § 78 (Vernon 1980). A person named executor in a will is given first priority when determining who is qualified to serve. *Id.* § 77. When an applicant is among those named in the Probate Code as entitled to priority, the burden is on the opposing party to establish the applicant's disqualification. *Powell v. Powell*, 604 S.W.2d 491, 493 (Tex. Civ.App.-Dallas 1980, no writ).

The will names Steve as successor independent executor. Clark therefore had the burden to prove Steve's disqualification at trial, and he presented no evidence to show that Steve was disqualified under the Probate Code. The Probate Code mandates that letters testamentary or letters of administration shall be granted to qualified persons named in the will. There was no evidence before the trial court to permit it to do otherwise. We hold that it was not an abuse of discretion to appoint Steve as independent executor. We thus overrule Clark's third issue.

### Conclusion

Having overruled Clark's three issues, we affirm the trial court's judgment.

Chief Justice GRAY concurring with a note.*

---

* (Chief Justice Gray concurs in the judgment only with the following note. A separate opinion will not issue: I concur only in the judgment of the Court. In its Opinion, a majority of this Court continues to diminish the otherwise expansive role of an independent executor in Texas. An independent executor in Texas may engage in what is traditionally thought of as self-dealing. That cannot, therefore, be considered as mismanagement, one of the grounds upon which an independent executor can be removed. It is clear that the majority opinion relies, in large part, on the determination that the new leases were improper self-dealing and, therefore, mismanagement of the estate and,

thus, a proper ground for removal. This re-
liance is improper and plays no part in my
concurrence in the judgment of the Court.)