## Fourth Court of Appeals
### San Antonio, Texas


## MEMORANDUM OPINION

No. 04-14-00391-CV

**IN THE ESTATE OF** Luisa R. **MONTEMAYOR**, Deceased

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2010PC3012
Honorable Tom Rickhoff, Judge Presiding

Opinion by: Patricia O. Alvarez, Justice

Sitting: Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: April 22, 2015

AFFIRMED

Marcelo R. Montemayor appeals the probate court's judgment removing him as independent executor of the Estate of Luisa R. Montemayor. Marcelo contends the probate court abused its discretion because the pleadings and evidence are insufficient to support his removal. Marcelo also contends the probate court erred in denying his request for a new trial and sanctions based on a discovery violation. We overrule Marcelo's contentions and affirm the probate court's judgment.

### PROCEDURAL BACKGROUND

Luisa R. Montemayor died testate on August 29, 2008. Luisa's will was admitted into probate on November 1, 2010, and Marcelo was appointed independent executor of Luisa's estate pursuant to the terms of the will. Luisa's will left her estate to her nine children. Because one of

Luisa's children had predeceased her, Luisa's will left that child's share to that child's surviving children. Marcelo and the four appellees in this appeal, Diana Hernandez, Mario Montemayor, Miguel R. Montemayor, and Elsa Montemayor, are five of Luisa's surviving children.

In February of 2011, the probate court approved the amended inventory Marcelo filed listing the sole estate asset as a house and lot located in Bexar County, Texas with a fair market value of $85,010.00 (the Property).[1] The amended inventory also listed one claim due and owing to the estate from Transamerica Life Insurance Company relating to an annuity.

In April of 2013, the appellees filed an application to appoint Diana as successor independent executrix. The application alleged that Marcelo had not "assiduously pursued settlement of the estate." The application further alleged that "grounds exist for removal of [Marcelo as] the independent executor due to misapplication of funds and other fiduciary property, breach of fiduciary duty, and self-dealing in estate property." In June of 2013, the appellees filed an amended application asserting the same allegations but including a request for attorney's fees. Marcelo filed a general denial in response to the application.

In January of 2014, the probate court held a hearing on the application. At the hearing, Mario Montemayor testified that after his mother died, Marcelo and his other siblings discussed hiring a realtor to sell the house. Before Luisa's will was admitted to probate, three offers were made to purchase the house. Although the buyer did not qualify on one of the offers and the record on the second offer is unclear, at least one offer progressed to an earnest money contract, but Marcelo rejected it. Mario testified that Marcelo moved from the garage apartment into the main house, and Marcelo told Mario "he was going to keep the house." Mario also testified that the conditions of the house and the garage apartment have deteriorated.

---

[1] The Property is described in the record as containing a one-acre lot, a main house with four bedrooms and two bathrooms, and a garage apartment with two bedrooms and one bathroom.

Elsa Montemayor also testified that Marcelo told her "[h]e was going to live and die in that house." Elsa also confirmed Marcelo had rejected an offer made to purchase the house before Luisa's will was admitted to probate. Elsa testified that Marcelo moved into the main house and continued living there rent-free after Luisa's death. Although Elsa stated she originally had keys and could access the house, Marcelo subsequently changed the code on the gate, and she could no longer access the house.

Marcelo testified that the Property was listed for sale with a realtor. Marcelo testified that the Property was insured and the taxes were current up through the date of trial. Marcelo stated he had not engaged in any actions to depreciate or waste the Property but admitted the Property needed major repair work. Marcelo admitted he changed the locks on the gate, but stated he never denied any of his siblings access to the Property.

Clemente S. Gonzales, a realtor, testified that the property was initially listed with him for one year in January or February of 2011. After that listing expired, Gonzales testified the house was off the market for about one year. Gonzales testified the property was again listed in September of 2013 and remained listed as of the date of the probate court's hearing which was in January of 2014.

After the hearing, the probate court signed a judgment removing Marcelo as independent executor. The probate court's judgment stated that the grounds for removing Marcelo were "(1) he is guilty of gross misconduct and gross mismanagement in the performance of the independent executor's duties; and (2) the independent executor has become incapable of properly performing the independent executor's fiduciary duties due to a material conflict of interest."[2] Marcelo filed a motion for new trial which the trial court denied. Marcelo appeals.

---

[2] Section 404.0035(b)(3) of the Texas Estates Code permits an independent executor to be removed when "the independent executor is proved to have been guilty of gross misconduct or gross mismanagement in the performance

**REMOVAL OF INDEPENDENT EXECUTOR**

In his first issue, Marcelo challenges the judgment removing him as independent executor. Marcelo contends the application for his removal did not allege gross misconduct, gross mismanagement, or material conflict of interest as grounds for his removal. Marcelo also contends the evidence does not support the allegation that he misapplied funds. Finally, citing the Texas Supreme Court's decision in *Kappus v. Kappus*, 284 S.W.3d 831 (Tex. 2009), Marcelo asserts the evidence only established a good faith disagreement over the value of the Property which was not a proper basis for his removal.

## A.      Standard of Review

A probate court's order removing an independent executor is reviewed for abuse of discretion. *See id.* at 836, 838; *In re Estate of Hoelzer*, 310 S.W.3d 899, 905 (Tex. App.—Beaumont 2010, pet. denied); *In re Estate of Miller*, 243 S.W.3d 831, 839 (Tex. App.—Dallas 2008, no pet.). Under an abuse of discretion standard, "[o]ur review is not limited to evaluating the sufficiency of the evidence supporting the trial court's findings, 'rather, we make an independent inquiry of the entire record to determine if the court abused its discretion.'" *In re Estate of Perez-Muzza*, 446 S.W.3d 415, 419 (Tex. App.—San Antonio 2014, pet. denied) (quoting *Scott Bader, Inc. v. Sandstone Prods., Inc.*, 248 S.W.3d 802, 812 (Tex. App.—Houston [1st Dist.] 2008, no pet.)); *Kirkland v. Schaff*, 391 S.W.3d 649, 655 (Tex. App.—Dallas 2013, no pet.). "A [probate] court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to guiding rules or principles." *Estate of Perez-Muzza*, 446 S.W.3d at 419; *accord Estate of Miller*,

---

of the independent executor's duties." TEX. ESTATES CODE ANN. § 404.0035(b)(3) (West 2014). Section 404.0035(b)(5) permits an independent executor to be removed when "the independent executor becomes incapable of properly performing the independent executor's fiduciary duties due to a material conflict of interest." *Id.* § 404.0035(b)(5).

243 S.W.3d at 839. "The [probate] court does not abuse its discretion if some evidence reasonably supports [its] decision." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

**B.      Gross Misconduct and Gross Mismanagement**

*1.      Pleadings*

Marcelo argues that the appellees' application for his removal did not specifically list gross misconduct or gross mismanagement as grounds for his removal.

"Texas follows a 'fair notice' standard for pleading, in which courts assess the sufficiency of pleadings by determining whether an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy." *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007). "'Gross misconduct' and 'gross mismanagement' include, at a minimum: (1) any willful omission to perform a legal duty; (2) any intentional commission of a wrongful act; and (3) any breach of a fiduciary duty that results in actual harm to a beneficiary's interests." *Estate of Miller*, 243 S.W.3d at 840–41; *In re Estate of Casida*, 13 S.W.3d 519, 524 (Tex. App.—Beaumont 2000, no pet.). Although the appellees did not specifically refer to the terms gross misconduct or gross mismanagement in their application, the appellees did allege that Marcelo breached his fiduciary duty and engaged in self-dealing. *See Estate of Miller*, 243 S.W.3d at 840–41. Because breaching a fiduciary duty and self-dealing are actions encompassed within the terms gross misconduct and gross mismanagement, *id.*, we conclude the allegations in the appellees' application provided sufficient notice to support Marcelo's removal on those grounds.

*2.      Defining Gross Misconduct and Gross Mismanagement*

In describing the legislature's use of the terms gross misconduct and gross mismanagement in this context, the Texas Supreme Court has noted "[t]he use of the adjective 'gross' indicates that something beyond ordinary misconduct and ordinary mismanagement is required to remove an independent executor [because] '[g]ross' is defined as '[g]laringly obvious; flagrant.'" *Kappus*,

284 S.W.3d at 836 (fourth alteration in original) (quoting AM. HERITAGE COLLEGE DICTIONARY 600 (3rd ed. 2000)). The court asserted using gross as a modifier "implies serious and willful wrongdoing" and "[t]he statute speaks of affirmative malfeasance." *Id.* at 837. Although recognizing "[a] potential conflict [of interest] does not equal actual misconduct," the court also recognized "there may be scenarios where an executor's conflict of interest is so absolute as to constitute what the statute terms 'gross misconduct or gross mismanagement.'" *Id.*

### 3. Breach of Fiduciary Duty to Beneficiaries

In describing when a conflict of interest can amount to "gross misconduct or gross mismanagement," the court cited the Waco court's decision in *In re Roy*, 249 S.W.3d 592 (Tex. App.—Waco 2008, pet. denied). *See Kappus*, 284 S.W.3d at 838 n.30. In *In re Roy*, the Waco court noted "[t]he statutory criteria of gross mismanagement and gross misconduct are sufficiently narrow to exclude ordinary negligence, yet sufficiently broad to include a fiduciary's breach of his higher and additional duties." 249 S.W.3d at 596. An executor of an estate is a fiduciary of the estate's property and "has a duty to protect the beneficiaries' interest by fair dealing in good faith with fidelity and integrity." *Id.* In addition, an executor's "personal interests may not conflict with his fiduciary obligations to the estate." *Id.*

### 4. Factors to Evaluate a Conflict of Interest

In *Kappus*, the Texas Supreme Court provided additional guidance:

> In deciding whether an executor's conflict amounts to "gross misconduct or gross mismanagement," trial courts should take into consideration several factors, including the size of the estate, the degree of actual harm to the estate, the executor's good faith in asserting a claim for estate property, the testator's knowledge of the conflict, and the executor's disclosure of the conflict.

*Kappus*, 284 S.W.3d at 837–38 (footnotes omitted).

### 5.   *Marcelo's Argument*

Citing *Kappus*, Marcelo contends the trial court abused its discretion in removing him because the dispute between the parties was a good faith disagreement regarding the value of the Property. *See id.* at 837. Marcelo invokes *Kappus* for its proposition that a "difference of opinion over the value of [estate] property does not warrant removal." *See id.*

### 6.   *Some Evidence to Support Removal*

Marcelo's argument overlooks the probate court's findings which were not limited to a finding that the parties disagreed about the value of the Property. Instead, the probate court found that Marcelo moved from a garage apartment located on the Property into the main house without the appellees' permission and that Marcelo excluded the appellees from the Property. The probate court also found that Marcelo stated he would not sell the Property and would live in the house until he died. Finally, the probate court found that the Property was not being properly maintained. After reviewing the record, we conclude there is some evidence to support the probate court's findings. *See Butnaru*, 84 S.W.3d at 211.

Based on the record evidence and the probate court's findings, the probate court could have taken into consideration the following factors in deciding whether Marcelo had a conflict of interest amounting to gross misconduct or gross mismanagement: (1) the Property was the sole asset of the estate; (2) Marcelo's actions were harming the estate by his continuing to live on the Property rent-free and his allowing the condition of the Property to deteriorate; (3) given the terms of Luisa's will, Marcelo's statements that he was "going to keep the house" and live there until he died, and his actions consistent with those statements, were not in good faith; and (4) Luisa could not have known that Marcelo would create this conflict. *See Kappus*, 284 S.W.3d at 837–38. Accordingly, the record supports the probate court's conclusion that Marcelo engaged in gross

misconduct or gross mismanagement because he breached his fiduciary duty to protect the beneficiaries' interest and allowed his personal interest to conflict with his fiduciary obligations.[3]

## SANCTIONS

In his second issue, Marcelo contends the trial court abused its discretion in refusing to grant his motion for new trial or his post-trial motion for sanctions on the basis that the appellees failed to comply with the discovery rules by failing to disclose a 2012 appraisal they obtained on the Property. The only argument in the brief relating to this issue is Marcelo's assertion that the appellees' application for removal was made in bad faith because of their willful and intentional failure to disclose the appraisal.

"[T]he failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct." *Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993). As the Texas Supreme Court has more recently explained, "waiver bars a trial court from awarding posttrial sanctions based on pretrial conduct of which a party 'was aware' before trial." *Meyer v. Cathey*, 167 S.W.3d 327, 333 (Tex. 2005). In this case, the record reflects that Marcelo received the appraisal about which he complains before the probate court's hearing commenced.[4] Accordingly, Marcelo was aware of the discovery dispute before trial. *See id.* By failing to obtain a pretrial ruling on the discovery dispute, he waived any request for sanctions based on that conduct. *See id.*

---

[3] Because we conclude the record supports Marcelo's removal for gross misconduct or gross mismanagement, we need not address any other grounds that also could have supported his removal. *See* TEX. R. APP. P. 47.1 (opinion must be as brief as practicable and address only issues necessary to final disposition).

[4] In addition to the testimony in the record, Marcelo's brief states "Before the hearing, for the first time Mario Montemayor disclosed the Market Analysis."

## CONCLUSION

Having reviewed the entire record, we conclude the probate court acted within its discretion when it determined that Marcelo engaged in gross misconduct or gross mismanagement because he breached his fiduciary duty to the beneficiaries. We overrule Marcelo's issues; the judgment of the probate court is affirmed.

Patricia O. Alvarez, Justice